No. 44,984

Norman Naaf, *Appellee,* v. Alvin Griffitts, *Appellant.*

(439 P. 2d 83)

Opinion filed April 6, 1968.

*Bill G. Honeyman,* of Topeka, argued the cause, and *Clinton C. Marker* and *Terrence S. Leek,* of Topeka, were with him on the brief for the appellant.

*M. D. Bartlow,* of Topeka, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: This action was instituted by the plaintiff, Norman Naaf, to recover damages he alleges resulted from breach of an express warranty in the sale to him of fifty-nine heifers by the

defendant, Alvin Griffitts. After a trial without a jury the district court rendered judgment in favor of the plaintiff, and defendant has appealed.

The principal points to be considered relate to (1) whether the seller expressly warranted that the heifers would calve during a certain two-months period; (2) the timeliness of notice of the alleged breach of warranty; and (3) the amount of damages properly recoverable by the plaintiff.

The evidence was sharply conflicting, but that most favorable to the plaintiff will be briefly summarized. The defendant, an experienced cattleman, ran an ad in the Topeka Daily Capital on or about August 15, 1965, which stated:

"150 Choice Angus and 60 choice Hereford heifers, to calf, September, October, $185. CR 2-8779, Topeka."

In response to the ad, the plaintiff, a farmer, with his son, contacted the defendant and inspected the heifers. In the ensuing discussion defendant was made aware of the fact plaintiff was interested in heifers that would calve for his herd and told the plaintiff the heifers had been with six Angus bulls in December and January, that they had been pregnancy tested by a veterinarian, and that they would calve in September or October 1965. Plaintiff, relying upon the ad and the defendant's oral statements, bought fifty-nine of the heifers on August 17.

The evidence at trial was that the heifers, in fact, had not been tested. Only ten of them calved during September and October; two calves were born in December; two more in January 1966; and finally twenty-four in May. Thus, thirty-eight of the heifers had calves by the defendant's bulls. Of the remaining twenty-one head, three of the heifers which did not calve were sold by the plaintiff, and eighteen were bred by plaintiff's bulls and subsequently calved during the summer of 1966.

During the latter part of December 1965, the plaintiff notified the defendant that only ten calves had been born, and "wanted to know what he was going to do about it." The defendant acknowledged something was wrong and proposed an offer of settlement, which was rejected by the plaintiff. This action for damages was filed shortly thereafter.

The district court, in its memorandum, found:

"The seller's statements of fact that the heifers had been pregnancy tested coupled with his advertisement and his statements that they would calf in

September or October (1965) was a statement of fact that they were pregnant. These statements also amounted to a warranty that the heifers were seven or eight months pregnant. Gestation period is 283 to 285 days, approximately 9½ months. These did not warrant that all heifers would give birth to live calves."

Judgment was rendered in favor of the plaintiff in the sum of $2,719.

The defendant first urges the trial court erred in holding the advertisement and oral statements of the defendant constituted an express warranty rather than expressions of opinion. The defendant relies on what was said in *McCullough v. Bales*, 125 Kan. 670, 265 Pac. 1110, to the effect that a statement as to when a cow will calve is only an expression of opinion. A careful reading of the case, however, reveals that the principle is applicable only in the absence of an express warranty.

One of our leading cases on the subject of express warranty, *Adrian v. Elmer*, 178 Kan. 242, 284 P. 2d 599, involved the fitness of a bull for breeding purposes. A portion of the opinion states:

"It is the general rule of law that a warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the agreement of sale, upon which it is intended that the buyer shall rely in making the purchase. No technical or particular words need be used to constitute an express warranty, yet whatever words are used must substantially mean the seller promises or undertakes to insure that certain facts are, or shall be, as he represents them. (*Topeka Mill & Elevator Co. v. Triplett*, 168 Kan. 428, 434, 213 P. 2d 964; *Lumber Co. v. Kelley*, 117 Kan. 285, 231 Pac. 71; 77 C. J. S., Sales, 1115, § 301.)

.     .     .     .     .     .     .     .     .     .     .     .     .     .

".   .   . If the facts or affirmations relied upon to prove an express warranty rest wholly in parol, it is the province of the jury to determine whether they amount to an express warranty. (*Topeka Mill & Elevator Co. v. Triplett*, supra; 46 Am. Jur., Sales, 507, § 326.)" (pp. 245, 246.)

In the instant case the trial court had evidence before it, which included the statements contained in the advertisement, that the defendant represented the heifers as having been pregnancy tested and would calve in September or October. Under the circumstances, these representations were more than mere expressions of opinion upon which the seller intended the buyer should rely. In accordance with the rule stated in *Adrian v. Elmer*, supra, the trial court, as the fact finder, was justified, from the evidence, in concluding that the defendant expressly warranted the heifers were seven or eight months pregnant.

The defendant further challenges the trial court's finding that

plaintiff gave notice of the alleged breach of warranty within a reasonable time. The evidence shows notice was received by the defendant during the latter part of December, approximately sixty days after the plaintiff ascertained that forty-nine of the heifers had not calved on schedule. Defendant acknowledges that whether a buyer notifies the seller about an alleged defect or breach of warranty within a reasonable time after discovery thereof is a question of fact (*Martin v. Scott Lumber Co.*, 127 Kan. 391, 273 Pac. 411; *Johnston v. Lanter*, 87 Kan. 32, 123 Pac. 719), but argues that because of the delay here he had no opportunity to make his own investigation of the facts, and therefore was prejudiced.

The record discloses that upon his being notified, the defendant promptly attempted to negotiate a settlement with the plaintiff, which, under the circumstances, was the only course open to him in an effort to rectify the situation. Because of the nature of the alleged breach, the only purpose to be served by notice was to open the way for normal settlement through negotiation of the parties. Once notice had been given, it was fully acted on by the defendant, and it does not appear he suffered any detriment from the delay. Whether or not the delay was reasonable must be determined from all the facts and circumstances, and the trial court's finding on the point will not be disturbed.

Defendant's remaining points relate to the amount of damages awarded plaintiff by the trial court. As a general rule, the measure of damages for breach of warranty is the loss directly and naturally resulting from the breach. In the absence of special circumstances showing damages of a different amount, this is the difference between the value of the goods at the time of delivery and the value they would have had if they had conformed to the warranty; and in a proper case, special or consequential damages may be recovered where they proximately result from the breach and may reasonably be regarded as having been within the contemplation of the contracting parties. (*Steele v. J. I. Case Co.*, 197 Kan. 554, 419 P. 2d 902; *Fox v. McKay Motor Co.*, 188 Kan. 756, 366 P. 2d 297; *Allen v. Brown*, 181 Kan. 301, 310 P. 2d 923; *Martin v. Scott Lumber Co.*, supra; 46 Am. Jur., Sales § 737, *et seq.*; 77 C. J. S., Sales § 374, *et seq.*) At defendant's request the trial judge stated into the record the measure of damages used by him in computing the extent of plaintiff's loss, which, in our opinion, conforms to the general rules above stated. In light of defendant's arguments that the damages

awarded were speculative and not supported by the evidence, we have carefully examined the entire record and find that the defendant has failed to affirmatively establish that the trial court erred in any respect.

The judgment is affirmed.