EWERS, Plaintiff-Appellant, v. EISENZOPF, d/b/a Verona Rock Shop, Defendant-Respondent.†

Supreme Court

*No. 76-422. Submitted on briefs February 28, 1979.—*
*Decided March 27, 1979.*
(Also reported in 276 N.W.2d 802.)

† Motion for reconsideration denied, without costs, on May 21, 1979.

484

For the appellant the cause was submitted on the brief of *Charles W. Giesen* and *Eisenberg, Giesen & Ewers* of Madison.

For the respondent the cause was submitted on the brief of *Donald F. Mitchell* of Madison.

COFFEY, J. The plaintiff-appellant appeals from a judgment dismissing his action against the owner of the Verona Rock Shop. The plaintiff brought the action seeking to recover damages for the death of 17 tropical fish in his salt water aquarium. The action was commenced in the small claims court of Dane county, County Judge Harry E. Larsen, presiding. The county court

dismissed the case and made a finding that neither an express nor an implied warranty was created in the purchase of certain sea shells, coral and a driftwood branch from the rock shop. The judgment appealed to the circuit court for Dane county was affirmed by Circuit Judge Michael B. Torphy, presiding.

The plaintiff-appellant, an aquarium hobbiest, purchased a salt water aquarium and fish in June, 1975. The defendant-respondent, the proprietor of the Verona Rock Shop, sold an assortment of rocks, jewelry, lapidary supplies, novelties and sea shells. On August 10th of 1975, the plaintiff selected several sea shells, a piece of coral and a driftwood branch at the defendant's shop for use in his aquarium. Before paying for the merchandise, Ewers' friend asked the sales clerk if the items selected were "suitable for placement in a salt water aquarium." The part time sales clerk with 3 years' experience at the rock shop replied "They had come from salt water and that they were suitable for salt water aquariums, if they were rinsed." The plaintiff purchased the items and returned to his home where he rinsed the shells, coral and branch for twenty minutes in a salt and tap water solution. Within one week after placing the shells, coral and branch in the tank, the plaintiff's 17 fish died.

The plaintiff discussed this problem with Ed Duren who owns the hobby shop where the plaintiff had purchased the aquarium and fish. Duren, after inspecting the tank, found the water polluted. He testified that he removed several sea shells from the tank and upon examination found they emitted a toxic odor. Duren stated at trial it was his opinion that the fish died as a result of this toxic matter released into the water by the decay of the creatures inhabiting the shells and coral. Duren explained that the decaying matter can be removed from the shells and coral by a week-long cleansing process which consists of soaking the items in boiling water.

The trial court dismissed the small claims action on each ground of express and implied warranty. Regarding the implied warranty issue, the court stated:

"From my own personal knowledge and experiences in life, . . . there are literally thousands of shell and rock shops throughout the country from coast to coast. I cannot find that there is an implied warranty by a . . . shop . . . which does not hold itself out or advertise itself as catering to fish hobbiests, that all of their rocks and shells are suitable in aquariums for all types of fish . . . ."

Dealing with the express warranty claim, the trial court said:

". . . I cannot find that there was an express warranty in this case upon a fish hobbiest . . . asking a young clerk whether . . . shells . . . were suitable for use in a salt water aquarium and gave the reply that they were suitable if properly rinsed. I cannot find that that constitutes an express warranty that these . . . shells . . . were expressly warranted to be suitable for the type of fish and the type of aquarium this plaintiff had."

The decision of the circuit court in affirming the trial court, notes the testimony of Mr. Duren stating that the shells should have been voided of decaying organic matter before being placed in the aquarium. The circuit court summarily affirmed the lower court's opinion on the implied warranty issue and stated, in reference to an express warranty:

". . . Neither the questions nor the answers to them are so clear and definite so as to constitute such a warranty.

"Suitability for usage in a salt water tank is not so concise as to promise suitability with any or all such fish and plants as might be placed in such a tank. (It might even be argued, however, that the answer to the question put was not in error for the method described by Duren for curing shells is little more than an extended rinsing or soaking.)"

*Issues:*

1. Whether the seller's statement that certain goods were "suitable for salt water aquariums, if they were rinsed" constitutes an express warranty under sec. 402.313, Stats.?

2. Whether there is an implied warranty: fitness for a particular purpose pursuant to sec. 402.315, Stats., when a seller is asked whether the items the buyer selected are "suitable for placement in a salt water aquarium?"

The Uniform Commercial Code's provision relating to the creation of an express warranty in a sales transaction has been codified in sec. 402.313, Wis. Stats., in the following language:

"(1) Express warranties by the seller are created as follows:

"(a) *Any affirmation of fact* or promise made by the seller to the buyer which relates to the goods and becomes a *basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise.

". . .

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." (Emphasis supplied.)

It should be pointed out that although sec. 402.313 (2) does not require the magic words of "warrant" or "guarantee" to establish an express warranty, a buyer has the burden of proving the purchase was consummated on the basis of factual representations regarding the "title, character, quantity, quality, identity, or condition of the goods." *A. A. Baxter Corp. v. Colt Indus-*

*tries, Inc.,* 88 Cal. Rptr. 842, 847, 10 Cal. App.3d 144 (1970) ; *See: Hagenbush v. Snap-On-Tools Corp.* 339 F. Supp. 676, 680 (D.C.N.H. 1972).

In the present case, the circuit court found that an express warranty was not made as the plaintiff's question and the sales clerk's answer were not "so clear and definite so as to constitute a warranty." However, sec. 402.313 (1), Stats., does not require a warranty to be stated with any degree of preciseness, only that the seller's statements are an affirmation of fact "that the goods shall conform to the affirmation or promise." Sec. 402.313 (1), Stats. Further, it has already been noted that "No technical or particular words need be used to constitute an express warranty, yet whatever words are used must substantially mean the seller promises or undertakes to insure that certain facts are, or shall be, as he represents them." *Naaf v. Griffitts,* 201 Kan. 64, 439 P.2d 83, 85 (1968). In the case before us, the statement by the sales clerk that the shells, coral and branch were "suitable for salt water aquariums, if they were rinsed" is an affirmation of fact regarding the quality and condition of the goods sold.

The second element required to establish an express warranty is that the affirmation of fact pertaining to the goods being purchased must become "a basis of the bargain." Sec. 402.313 (1), Stats. The statutory language *"a basis* of the bargain" does not require the affirmation to be the sole basis for the sale, only that it is *a factor* in the purchase. The official Uniform Commercial Code Comments to §2–313 explains that the seller's intent to establish a warranty and the buyer's reliance on the affirmation are not determinative as to whether the representation is a basis of the bargain:

"No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the

bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact." *See: Sessa v. Riegle*, 427 F. Supp. 760 (E.D. Pa. 1977) and "Express Warranties and Greater Consumer Protection from Sales Talk" 50 Marq. L. Rev. 88 (1966).

In *Pritchard v. Liggett & Myers Tobacco Co.*, C.A. 1965, 350 F.2d 479, *cert. den.* 86 S. Ct. 549, 382 U.S. 987, 15 L. Ed.2d 475, opinion amended 370 F.2d 95, *cert. den.* 87 S. Ct. 1350, 386 U.S. 1009, 18 L. Ed.2d 436, it was recognized that the seller's intent and the buyer's reliance were irrelevant to a determination of whether an express warranty had been made. The Court set forth a workable test for finding whether an express warranty has been created:

"The true test is not whether the seller actually intended to be bound by his statement but rather whether he made an affirmation of fact *the natural tendency of which was to induce the sale and which did in fact induce it.*" *Id.* at 487. (Emphasis supplied.)

In this appeal the plaintiff purchased the shells, coral and branch for use in his aquarium. Certainly, the sales clerk's representations regarding the suitability of the goods induced Ewers to purchase the shells, coral and branch, for if these items were not suitable for the fish tank the plaintiff would not have consummated the transaction.

Additionally, we cannot agree with the circuit court that the curing or cleansing process detailed by Edward Duren to make the shells satisfactory for use is the same as the colloquial meaning of the word "rinsed."

Had the seller more thoroughly described the required cleansing process of submerging the items in boiling water for a period of a week, we would be reaching a different result and affirming the judgments of the lower courts. But in the instant case the goods did not and could not conform to the seller's affirmation of suitability for their intended use, even though the plaintiff followed the seller's vague directions regarding the cleansing process.

We hold the seller's statements constituted an express warranty when the seller specifically stated the merchandise would be suitable for use in the aquarium after rinsing. Therefore, the buyer in this particular fact situation is entitled to recover as the terms of the warranty were not fulfilled. The fact that the defendant's shop does not primarily cater to buyers of aquarium equipment and that the shop owner is relatively inexperienced in the field, does not relieve him of liability. In *Cagney v. Cohn*, 13 U.C.C. Rep 998 (D.C.S. Ct. 1973) the seller's lack of experience in the field was held inconsequential to the determination of whether a warranty was made during the sale of a defective motorcycle, the court stating:

"The particular statements made during the sales negotiations and the surrounding circumstances of this sale have been carefully considered by the Court, since the defendant seller is neither a motorcycle expert nor a dealer. Nevertheless, such a lay status does not exempt the defendant from §2–313 of the Uniform Commercial Code.

"Section 2–313 addresses itself to assertions made by the seller which become part of the basis of the bargain. Paragraph 8 of the official comments to §2–313 states that it must be determined '[w]hat statements of the seller have in the circumstances and objective judgment become part of the basis of the bargain?' And in answer thereto, the commentators declare that 'all of the statements of the seller do so unless good reason is shown to the contrary.'" *Id.* at 1003.

The record in this case is void of any indication that the purchaser did not exercise good judgment in purchasing the merchandise based upon the seller's representations.

We hold that the facts in this case do not support an implied warranty theory of fitness for a particular use pursuant to sec. 402.315, Stats., and note further for this section to be applicable the seller must select the goods. This requirement has been explained in Williston, *Sales* in the following language:

"Obviously, in order for the implied warranty of fitness for a particular purpose to arise, and for the buyer to be able to apply §2–315, there must be a reliance on the seller by the buyer and that seller must select goods which turn out to be unfit for the particular purpose indicated by the buyer. Where the buyer makes his own selection of goods, he cannot expect to recover upon the implied warranty of fitness for a particular purpose, since he does not meet the criteria for applying §2–315 . . . ." *Id.* at Vol. 3 at 125 (4th ed. 1974).

Courts of this state should carefully consider and evaluate the circumstances surrounding transactions where there is a claim made of an express warranty in a sale. Judicial decisions must not inhibit the free flow of relevant information between the buyer and the seller. Nevertheless, a merchant must be cautious in going beyond "puffing" in making claims and representations about their product. Further, the seller must give specific directions when he claims the goods are suitable for an intended and limited use. A merchant's vague or incomplete directions will induce the purchase of merchandise and often these directions are as misleading as when erroneous affirmations of fact are given. A merchant who knows the limitations of his product will bear no liability as long as he is truthful and accurate in his representations to the customer.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.

WILLIAM G. CALLOW, J. (*dissenting*). In reversing the trial court, the majority finds the seller's statement that the rocks would be suitable for use in the plaintiff's salt water aquarium if rinsed to be an affirmation of fact which became the basis of the bargain, creating an express warranty under sec. 402.313, Stats. The majority holds: (1) there was an express warranty, and (2) the seller breached the warranty. In my opinion the record supports neither conclusion.

The trial court and the circuit court on appeal found that the seller's statement did not constitute an express warranty. The trial court did not set forth its reasoning in detail, but one may infer that it believed the statement to be too vague to constitute an affirmation of fact forming the basis of the bargain within the meaning of sec. 402.313, Stats. The circuit court explicitly determined that "[n]either the questions nor the answers to them are so clear or definite so as to constitute such a warranty."

Ordinarily the question whether a statement constitutes an express warranty is a question of fact. *Cf.: Acme Equipment Corp. v. Montgomery Co-operative Creamery Asso.,* 29 Wis.2d 355, 359–60, 138 N.W.2d 729 (1966). *See:* Wis. J I—Civil, Part II, 3230. The trial court's finding should not be upset unless against the great weight and clear preponderance of the evidence. *In re Estate of Malnar,* 73 Wis.2d 192, 207, 243 N.W.2d 435 (1976). Where the evidence admits of more than a single inference, we must accept the inferences drawn by the trial court. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977). I believe the majority ignores these principles in reaching its decision. Here, the buyer asked the sales clerk in a rock shop if the items he selected were suitable for a salt water aquarium, without mentioning fish. Her answer, "yes, if they were rinsed," was a qualified and conditional response. There-

fore, the buyer was put on notice that the items purchased were not suitable for that purpose in their existing state. The buyer elected not to pursue further inquiry to determine why the items were not suitable for use in a salt water tank in their present condition, did not ask the seller to what extent rinsing was necessary nor what rinsing accomplished to make them suitable for his intended use, did not ask about their effect on fish, and did not specify that his was a closed system aquarium.

This case concerns a merchant dealing in rocks not aquarium accessories. There is no holding out of special expertise on the subject of aquarium supplies by the seller. Between buyer and seller the only one having any apparent experience with an aquarium is the buyer. The record conclusively shows the seller stated the items were not usable in a salt water aquarium unless they were rinsed. The sale occurred notwithstanding this admonition. We do not have an affirmation of fact but instead a cautionary instruction. The buyer bought the items accepting the obligation to do that which would be necessary to make them usable. Since the items were acknowledged by both parties to be unusable for the buyer's purpose in the form in which they were offered for sale, it was the buyer's duty to pursue an inquiry as to the reasons they were unsuitable for his purpose and to seek reasonably specific instructions concerning the treatment necessary to make them usable. Such information was reasonably available. After the fish died, upon inquiry plaintiff was told by Edward Duren, the proprietor of the store where he bought his fish and fish tank, that these items are made usable by extended rinsing and soaking.

Thus the evidence amply supports a finding that there was no affirmation of fact by the seller becoming part of the bargain. I believe the majority recognizes as

much in the last paragraph of the opinion: "A merchant's vague or incomplete directions will induce the purchase of merchandise and often these directions are as misleading *as when erroneous affirmations of fact are given.*" (Emphasis added.) I believe sec. 402.313, Stats., requires "erroneous affirmations of fact," and nothing less, as a condition precedent to recovery. If ever a seller was caught between a rock and a hard place, this is the classic case. Here there was a vague exchange which should have put the buyer on notice that the goods were unsuited in their present state for the intended use. The trial court's finding is supported by the record.

The majority's second holding—that the warranty was breached—is equally unsound. Because the trial court and circuit court on appeal found that there was no warranty, there was no need for these courts to reach the question of breach. The circuit court did state, however:

"Suitability for usage in a salt water tank is not so concise as to promise suitability with any or all such fish and plants as might be placed in such a tank. (*It might even be argued, however, that the answer to the question put was not in error for the method described by Duren for curing shells is little more than an extended rinsing or soaking.*)" (Emphasis added.)

In making what amounts to a finding of fact that the warranty was breached, the majority compounds the error of determining that there was an express warranty in the inconclusive exchange between the plaintiff and the defendant's sales clerk: Where there is no definite affirmation of fact, how is one to determine that there has been a breach of the supposed warranty? I agree with the trial court's suggestion that a reasonable person might conclude that the seller's general admonition was correct. If anything, the buyer failed to comply with the condition of any "affirmation."

Assuming there was an express warranty, as the majority holds, the evidence does not show that the defendant breached it. The rocks and shells would have been suitable for the plaintiff's use had the plaintiff rinsed them in the manner he later ascertained to be appropriate. My view of the record would be different had there been an express trial court finding that plaintiff fully complied with the condition.

A "yes but" or a "no unless" representation by a seller should shift the burden to the buyer to get the specifics of the treatment necessary to make the item usable for the buyer's purposes. Unless he does, he buys at his peril. If instructions to make the item adaptable are given by the seller to the buyer, the buyer must show reasonable conformance with the instructions before he makes out a prima facie case of breach. Such a requirement will cause consideration by both parties of the potential problems involved in the qualified usability. Since the buyer is in the best position to know the specific use contemplated, it should be his duty to seek specific instructions on making the item adaptable.

The trial court and the circuit court on appeal found that no promise or affirmation of fact was made by the seller to the buyer which formed the basis for the bargain under sec. 402.313, Stats. That finding is not against the great weight and clear preponderance of the evidence. The buyer, having specific notice of unsuitability, bought at his peril and should suffer the consequential loss. Moreover, the evidence shows no breach of any representation. The trial court properly dismissed the action.

I am hereby authorized to state that Mr. Justice ROLAND B. DAY joins in this dissenting opinion.